# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# ROANOKE DIVISION

| | |
|---|---|
| BARRY W. FREEMAN, | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| v. | ) Civil Action No. 7:12-CV-50 |
| | ) |
| MICHAEL J. ASTRUE, | ) |
| **Commissioner of Social Security,** | ) |
| | ) |
| **Defendant.** | ) |

## REPORT AND RECOMMENDATION

Plaintiff Barry W. Freeman ("Freeman") filed this action challenging the final decision of the Commissioner of Social Security, ("Commissioner"), finding him not disabled and therefore ineligible for both supplemental security income, ("SSI"), and disability insurance benefits, ("DIB"), under the Social Security Act, ("Act"), 42 U.S.C. §§ 1614(a)(3)(A); 1381-1383f.

Jurisdiction of this court is pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). This case is before me by referral pursuant to 28 U.S.C. § 636(b)(1)(B). The parties have fully briefed and argued all issues, and the case is now ripe for decision. I have carefully reviewed the administrative record, the legal memoranda, and argument of counsel and the applicable law, and conclude that substantial evidence supports the ALJ's decision. As such, I **RECOMMEND DENYING** Freeman's motion for summary judgment (Dkt. # 10), and **GRANTING** the Commissioner's motion for summary judgment (Dkt. # 13).

## STANDARD OF REVIEW

Section 405(g) of Title 42 of the United States Code authorizes judicial review of the Commissioner's denial of social security benefits. Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir.

2001).  This court limits its review to a determination of whether substantial evidence exists to support the Commissioner's conclusion that Freeman failed to demonstrate that he was disabled under the Act.  Substantial evidence is "evidence which a reasoning mind would accept as sufficient to support a particular conclusion.  It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966).  If such substantial evidence exists, the final decision of the Commissioner must be affirmed.  Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990).

Freeman bears the burden of proving that he is disabled within the meaning of the Act. English v. Shalala, 10 F.3d 1080, 1082 (4th Cir. 1993) (citing 42 U.S.C. § 423(d)(5)(2006)).  The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment, which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).  Disability under the Act requires showing more than the fact that the claimant suffers from an impairment which affects his ability to perform daily activities or certain forms of work.  Rather, a claimant must show that his impairments prevent him from engaging in all forms of substantial gainful employment given his age, education and work experience. See 42 U.S.C. §§ 423(d)(2) and 1382c(a)(3)(B).

The Commissioner uses a five-step process to evaluate a disability claim. Walls v. Barnhart, 296 F.3d 287, 290 (4th Cir. 2002).  The Commissioner asks, in sequence, whether the claimant: (1) is working; (2) has a severe impairment; (3) has an impairment that meets or equals the requirements of a listed impairment; (4) can return to his past relevant work; and if not, (5) whether he can perform other work. Heckler v. Campbell, 461 U.S. 458, 460-462 (1983);

Johnson v. Barnhart, 434 F.3d 650, 654 n.1 (4th Cir. 2005) (citing 20 C.F.R. § 404.1520). The inquiry ceases if the Commissioner finds the claimant disabled at any step of the process. 20 C.F.R. §§ 404.1520(a)(4), 20 C.F.R. § 416.920(a)(4). The claimant bears the burden of proof at steps one through four to establish a prima facie case for disability. The burden shifts to the Commissioner at step five to establish that the claimant maintains the Residual Functioning Capacity ("RFC"), considering the claimant's age, education, work experience, and impairments, to perform available alternative work in the local and national economies. 42 U.S.C. § 423(d)(2)(A); Taylor v. Weinberger, 512 F.2d 664, 666 (4th Cir. 1975).

## STATEMENT OF FACTS

### Social and Vocational History

Freeman was born on November 12, 1965 (Administrative Record, hereinafter "R." 241) and is considered a younger individual under the Act. 20 C.F.R. §§ 404.1563(c), 416.963(c)(2011). Freeman's date last insured is December 31, 2010, and thus, he must show that his disability began before that date, and existed for twelve continuous months to receive DIB benefits. 42 U.S.C. § 423(a)(1)(A), (c)(1)(B); 20 C.F.R. §§ 404.101(a), 404.131(a). To receive SSI benefits, Freeman must establish that his disability began on or after the date he applied for benefits. 42 U.S.C. § 1383(a)(1); 20 C.F.R. § 416.501.

Freeman attended school through the 12th grade. R. 278. Freeman was in the military from 1984 through 1987. R. 241. Freeman's past relevant work includes employment as a cook at the medium to heavy unskilled exertional level. R. 79-80. He stopped working in 2005 due to back pain. R. 274. Freeman reported that during the relevant period he prepared his own meals,

shopped in stores, and did housework. R. 292.  He stated that he spend most of his days home-bound, in his bed or reclining on the couch all day. R. 290, 294.

## Claim History

Freeman filed claims for SSI and DIB on April 14, 2008 (R. 238, 241), claiming that his disability began on February 6, 2008 (the day after his an ALJ rendered an unfavorable decision on one of his prior applications), due to arthritis and back problems. R. 274.  The state agency denied his application at the initial and reconsideration levels of administrative review. R. 112, 120, 124.  On November 18, 2010, ALJ Karen B. Peters held a hearing to consider Freeman's disability claim. R. 24.  Freeman was represented by counsel at the hearing, which included testimony from Freeman and vocational expert James Williams. R. 24-63.  At the hearing, Freeman's counsel indicated that the record was not complete, and ALJ Peters agreed to issue requests for the missing records and hold the record open after the hearing. R. 61-62.  ALJ Peters also arranged for a post-hearing consultative examination with William Humphries, M.D. R. 751.

On March 7, 2011, after the record was complete and Dr. Humphries' report received, ALJ Joseph T. Scruton (to whom the case was transferred in light of ALJ Peters' retirement) convened a supplemental hearing. R. 66.  Freeman was again represented by counsel, and testified at the hearing, along with vocational expert Ashley Wells. R. 64-84.

On June 10, 2011, ALJ Scruton entered his decision denying Freeman's claims for DIB and SSI. R. 13-23.  The ALJ found that Freeman suffered from the following severe impairments: obesity; mild diastolic hypertension; history of tachycardia without evidence of congestive heart failure; chronic thoracolumbar strain; polyarthralgia due to Reiter's syndrome;

history of elevated liver enzymes without evidence of hepatic failure; no useful right eye vision and slightly reduced left eye vision with correction with non prescription "reading glasses," and coronary artery disease. R. 16.

Considering these impairments, the ALJ found that Freeman retained the RFC to perform sedentary work, except that he can lift and/or carry up to 10 pounds occasionally; to stand/walk for up to two hours in an eight hour workday with the option to sit/stand for brief postural changes in place; and to sit for up to six hours in an eight hour workday. He also restricted Freeman to occasional climbing of ramps and stairs, bending, balancing, kneeling, crawling, stooping, and crouching; no overhead reaching on greater than an occasional basis with the right upper extremity; and employment that does not require working around dangerous machinery or unprotected heights. He found that Freeman can maintain concentration for an eight hour workday if it involves tasks with short, simple instructions, and that Freeman cannot do work requiring excellent visual acuity, but can read newspaper-article size print/characters. R. 17-18.

The ALJ determined that, given the evidence obtained from the vocational expert at the administrative hearing, Freeman can perform work, such as surveillance monitor, charge account clerk, and addressing clerk, all of which exist in significant numbers in the national economy. R. 22. On December 5, 2011, the Appeals Council denied Freeman's request for review, and this appeal followed. R. 1-3.

## **ANALYSIS**

Freeman argues that the ALJ erred by 1) improperly evaluating Freeman's pain complaints and credibility; and, 2) failing to properly consider the impact of Freeman's obesity on his residual functional capacity.

5

**Pain and Credibility Determination**

Freeman argues that the ALJ erred by failing to assign substantial credibility to his testimony that he suffers from severe, disabling pain. At the administrative hearings, Freeman testified that he spends the majority of his day on the couch because activity causes him pain; he wears a back brace when he leaves his apartment or performs chores; his back pain prevents him from sitting or standing for a long time; and, he has to lie down periodically throughout the day due to pain. R. 41-49.

The ALJ determines the facts and resolves inconsistencies between a claimant's alleged impairments and his ability to work. See Smith v. Chater, 99 F.3d 635, 638 (4th Cir. 1996). Freeman's subjective allegations of disabling pain are not conclusive. Rather, the ALJ must examine all of the evidence, including the objective medical record, and determine whether Freeman met his burden of proving that he suffers from an underlying impairment which is reasonably expected to produce his claimed symptoms. Craig v. Chater, 76 F.3d 585, 592-93 (4th Cir. 1996). The ALJ then must evaluate the intensity and persistence of the claimed symptoms and their effect upon Freeman's ability to work. Id. at 594-95.

In this case, the ALJ recognized that Freeman suffers from severe impairments that cause him to experience pain. As the ALJ noted in his opinion, the issue is not whether Freeman has pain, but whether that pain is so severe as to be disabling. The ALJ found that Freeman's statements regarding disabling pain are not entirely credible and are not supported by the degree of medical treatment he received, the findings made on examination, and the reports of the reviewing, treating and examining physicians in the record. The ALJ included a detailed analysis of Freeman's treatment records in his opinion in support of this conclusion.

A reviewing court gives great weight to the ALJ's assessment of a claimant's credibility and should not interfere with that assessment where the evidence in the record supports the ALJ's conclusions. See Shively v. Heckler, 739 F.2d 987, 989-90 (4th Cir. 1984)(finding that because the ALJ had the opportunity to observe the demeanor and to determine the credibility of the claimant, the ALJ's observations concerning these questions are to be given great weight.) After a review of the record as a whole, I find that substantial evidence supports the ALJ's determination that Freeman's testimony regarding his disabling pain is only partially credible, and that Freeman is capable of performing the limited range of sedentary work set forth in the ALJ's opinion.

Freeman's treatment records do not reflect a debilitating condition, but rather a condition that required conservative treatment and was controlled by medication. Freeman's primary complaint in this disability proceeding is low back pain. R. 49. The record reflects that Freeman's back pain was managed conservatively with non-narcotic medications, aqua therapy and recommendations for physical therapy. R. 496-97, 636, 728, 751. Freeman received routine care from a primary care physician and pain management specialist, with no narcotic medication, injections or surgical interventions. Freeman is obese, thus; his physicians repeatedly recommended weight loss and increased physical activity. R. 502, 704, 728. Freeman's vision problems and shortness of breath were corrected with eyeglasses and medication. R. 502, 748.

The record also reflects that Freeman's subjective assessments of his pain at medical appointments demonstrated that his pain was largely controlled with medication. He consistently rated his pain as no more than a "2" or "3" on a scale of 1-10. R. 357, 358, 372, 496, 504, 518, 552, 710, 732. On February 26, 2008, Freeman's primary care physician, Chand Singh, M.D.,

noted that Freeman described his back pain as "controlled" with his current therapy of Indocin and Tramadol. R. 358. If a symptom can reasonably be controlled by medication, it is not disabling. Gross v. Heckler, 785 F.2d 1163 (4th Cir. 1986).

Freeman's objective medical records also support the ALJ's conclusion that Freeman is capable of performing a limited range of sedentary work. A lumbar x-ray taken in September 2006 showed that Freeman has degenerative disc disease at L4-L5 and L5-S1 with minor spurs at those levels and no additional abnormalities. R. 414. Likewise, a follow up lumbar x-ray in January 2009 showed "some disk space narrowing at L4-L5 and L5-S1, but otherwise [was] unremarkable." R. 465, 492. Treatment notes throughout the period of alleged disability show that Freeman had full strength in his bilateral extremities, normal muscle tone, and intact sensation. R. 493, 496, 501.

Additionally, no physician found that Freeman's impairments prevent him from working or otherwise engaging in productive activity. In June and October 2008, respectively, expert state agency physicians Robert McGuffin, M.D., and Richard Surrusco, M.D. reviewed the record and found that Freeman could perform work at the sedentary level of exertion. R. 327, 423. On February 3, 2009, Freeman's pain management specialist, Dr. Gullapalli, noted that he was not able to correlate the degree of limitation that Freeman claimed to experience with clinical or radiographic findings. R. 494. Dr. Gullapalli examined Freeman and found no paraspinal muscle spasm, and mild tenderness over the paraspinal region and right lower lumbar region. R. 493. Dr. Gullapalli noted that "clinically and radiologically," he was "unable to correlate the degree of functional impairment that the plaintiff has." R. 494.

On March 7, 2011, Freeman underwent a consultative physical examination with Dr. Humphries. Dr. Humphries noted on physical exam that Freeman's neck was tender, and his neck range of motion was mildly reduced. Range of motion in Freeman's back was mildly reduced, with no paravertebral spasm. R. 752. Straight leg test was negative to 90 degrees sitting Dr. Humphries noted that Freeman's movements on and off the table were guarded but he had a full range of motion in the upper extremities, range of motion in the hips was mildly reduced, and normal in both knees and ankles. R. 752-53. Dr. Humphries concluded that Freeman can lift 25 lbs occasionally and 10 lbs frequently. He found that Freeman can sit for six hours in an eight hour day, stand/walk for two hours in an eight hour day, and should avoid climbing, kneeling, crawling, heights and hazards. R. 754.

The ALJ does not assert that Freeman is pain free. On the contrary, the ALJ recognizes that Freeman suffers from severe conditions that greatly limit his ability to function. The issue, however, is not whether Freeman has physical impairments or experiences symptoms, but whether those impairments and symptoms prevent him from performing the limited range of unskilled, sedentary jobs identified by the vocational expert. See Green v. Astrue, 3:10CV764, 2011 WL 5593148, at *4 (E.D. Va. Oct. 11, 2011) (citing Hays v. Sullivan, 907 F.2d 1453, 1457-58 (4th Cir. 1990)) ("An individual does not have to be pain-free in order to be found 'not disabled.'"), report and recommendation adopted, 3:10CV764, 2011 WL 5599421 (E.D. Va. Nov. 17, 2011).

The ALJ accounted for the limitations posed by Freeman's impairments by limiting him to a range of sedentary work, the lowest level of physical exertion. The ALJ imposed a sit/stand option, and restricted Freeman's ability to climb ramps and stairs, bend, balance, kneel, crawl,

9

stoop, crouch, overhead reach with the right upper extremity, be exposed to dangerous machinery or unprotected heights. The ALJ further restricted Freeman to jobs with short, simple instructions that do not require excellent visual acuity. R. 17. The RFC determined by the ALJ is more restrictive than any of the medical opinions in the record.

Freeman's appeal essentially asks the court to re-analyze the facts and re-weigh the evidence; disregarding the substantial evidence standard of review that this court must apply to the ALJ's decision. Freeman asserts that the medical evidence of record "corroborates" his testimony; that his testimony is supported by substantial evidence; and that the ALJ improperly analyzed his pain complaints and credibility. Pl.'s Br. 12-15. The issue before this court is not whether it is plausible that a different fact finder could have drawn a different conclusion or even if the weight of the evidence supports a finding of disability. The standard is whether the ALJ's decision is supported by substantial evidence. So long as this standard—defined as more than a mere scintilla but perhaps somewhat less than a preponderance—is met, I cannot recommend reversing the ALJ. Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996) (internal citations omitted). Furthermore, credibility determinations are emphatically the province of the ALJ, not the court, and courts normally should not interfere with these determinations. See, e.g., Chafin v. Shalala, No. 92-1847, 1993 WL 329980, at *2 (4th Cir. Aug. 31, 1993) (per curiam) (citing Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990) and Thomas v. Celebrezze, 331 F.2d 541, 543 (4th Cir. 1964)); Melvin v. Astrue, 6:06 CV 00032, 2007 WL 1960600, at *1 (W.D. Va. July 5, 2007) (citing Hatcher v. Sec'y of Health & Human Servs., 898 F.2d 21, 23 (4th Cir. 1989)). Here, the ALJ's credibility determination is supported by substantial evidence, and should not be

disturbed. See Johnson v. Barnhart, 434 F.3d 650, 658-59 (4th Cir. 2005) (per curiam) (citing Craig, 76 F.3d at 589).

**Obesity**

Freeman argues that the ALJ failed to properly consider the impact of his obesity upon his residual functional capacity. The regulations require the ALJ to consider the combined effects of obesity with other impairments and to consider the effects of obesity at steps two through five of the sequential disability evaluation. Social Security Ruling ("SSR")[1]; see also Barr v. Astrue, 5:10CV00074, 2011 WL 3420844, at *5-*6 (W. D. Va. Aug. 4, 2011) report and recommendation adopted by 5:10CV00074, 2011 WL 3847154 (W.D. Va. August 30, 2011). There is no requirement in the regulations that the ALJ include a lengthy or precise analysis in the opinion. Richards v. Astrue, 6:11-CV-00017, 2012 WL 5465499, at *6 (W.D. Va. July 5, 2012) (internal citations omitted). Rather, courts have found that the ALJ may rely upon medical records which adequately show a claimant's obesity and adopt the conclusions of doctors who are aware of the claimant's obesity. Id. (citing Rutherford v. Barnhart, 399 F.3d 546, 552-53 (3d Cir. 2005); see also Martin v. Barnhart, 5:10CV00102, 2012 WL 663168, at *5 (W.D. Va. Feb. 29, 2012) report and recommendation adopted sub nom. Martin v. Astrue, 5:10CV00102, 2012 WL 994903 (W.D. Va. Mar. 23, 2012) (rejecting the claim that the ALJ failed to properly consider obesity where the ALJ discussed the claimant's testimony and took note her the medical opinions of record regarding her weight).

In this case, the ALJ properly accounted for Freeman's obesity. The ALJ found that Freeman's obesity was a severe impairment. R. 16. The ALJ noted Freeman's body mass index

---

[1] "Social Security Rulings are interpretations by the Social Security Administration of the Social Security Act. While they do not have the force of law, they are entitled to deference unless they are clearly erroneous or inconsistent with the law." Pass v. Chater, 65 F.3d 1200, 1204 n.3 (4th Cir. 1995) (citing Han v. Bowen, 882 F.2d 1453, 1457 (9th Cir. 1989)).

on the date of his disability application, the notations in 2010 by Freeman's physicians of his steady five-year weight gain, and treatment recommendations of weight management therapy. R. 16. The ALJ specifically took into account the considerations required by SSR 02-01p in reaching his conclusions. R. 16. The ALJ further relied upon the medical records of the doctors who treated Freeman's obesity and other medical conditions. Critically, the ALJ relied upon the consultative examination of Dr. Humphries, who found that Freeman could perform sedentary work despite his obesity. R. 754. Finally, the ALJ restricted Freeman's RFC to a very limited range of sedentary work, which accounts for any limitations caused by Freeman's obesity.

To challenge an ALJ's obesity analysis, the claimant must advance additional, obesity-related functional limitations not accounted for by the ALJ in his determination of the claimant's RFC. Matthews v. Astrue, 4:08CV00015, 2009 WL 497676, at *4 n.4 (W.D. Va. Feb. 27, 2009); see also Phelps v. Astrue, 7:09CV0210, 2010 WL 3632730, at *7 (W.D. Va. Sept. 9, 2010). That is, Freeman must provide medical evidence establishing functional limitations not addressed in the RFC. Richards, 2012 WL 5465499, at *13. Here, Freeman argues that the ALJ did not account for the fact that his obesity exacerbates his chronic pain from his polyarthralgia and thoracolumbar strain, which results in difficulties sitting for a length of time, and need to lie down during the day. Pl.'s Br. 19.

The ALJ accounted for the impact Freeman's obesity has on his chronic pain by restricting Freeman to a limited range of sedentary work. R. 17-21. The ALJ included a sit/stand option with brief postural changes in place to accommodate Freeman's difficulty sitting for a length of time. R. 17. He further accounted for Freeman's pain by finding that Freeman had the ability to maintain attention and concentration for only short, simple tasks. R. 17. The medical

records do not demonstrate that Freeman's obesity caused significant limitations other than those identified by the ALJ and accounted for in the RFC. Thus, the ALJ properly accounted for the limitations arising from Freeman's obesity in his RFC analysis, and relied upon medical evidence taking Freeman's obesity into account, in accordance with SSR 02-1p.

## **CONCLUSION**

It is not the province of the court to make a disability determination. The court's role is limited to determining whether the Commissioner's decision is supported by substantial evidence, and in this case, substantial evidence supports the ALJ's opinion. In recommending that the final decision of the Commissioner be affirmed, I do not suggest that Freeman is totally free from any distress. The objective medical record simply fails to document the existence of any physical conditions which would reasonably be expected to result in total disability from all forms of substantial gainful employment. It appears that the ALJ properly considered all of the objective and subjective evidence in adjudicating Freeman's claim for benefits and in determining that his physical impairments would not prevent him from performing any work. It follows that all facets of the Commissioner's decision in this case are supported by substantial evidence. Accordingly, I recommend that the Commissioner's decision be affirmed, the defendant's motion for summary judgment be **GRANTED**, and Freeman's motion for summary judgment be **DENIED**.

The Clerk is directed to transmit the record in this case to Michael F. Urbanski, United States District Judge, and to provide copies of this Report and Recommendation to counsel of record. Both sides are reminded that pursuant to Rule 72(b), they are entitled to note any objections to this Report and Recommendation within fourteen (14) days hereof. Any

adjudication of fact or conclusion of law rendered herein by me that is not specifically objected to within the period prescribed by law may become conclusive upon the parties. Failure to file specific objections pursuant to 28 U.S.C. § 636(b)(1)(C) as to factual recitations or findings as well as to the conclusion reached by me may be construed by any reviewing court as a waiver of such objection.

        Entered: July 10, 2013

        /s/ Robert S. Ballou

        Robert S. Ballou
        United States Magistrate Judge